1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

CINDY COLEMAN-ANACLETO,

Plaintiff,

13

14

v.

15

SAMSUNG ELECTRONICS AMERICA, INC.,

16

Defendant.

17

Case No. 16-CV-02941-LHK

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

[PUBLIC REDACTED VERSION]

Re: Dkt. Nos. 13, 16

18       Defendant Samsung Electronics America, Inc. ("Defendant") removed this action from

19   Santa Clara County Superior Court based on diversity jurisdiction under the Class Action Fairness

20   Act ("CAFA"), 28 U.S.C. § 1332(d).  ECF No. 1.  Plaintiff Cindy Coleman-Anacleto ("Plaintiff")

21   now moves to remand the case to state court.  ECF No. 13.  Also before the Court is Defendant's

22   motion to dismiss Plaintiff's complaint.  ECF No. 16.  Having considered the parties' briefing, the

23   relevant law, and the record in this case, the Court hereby DENIES Plaintiff's motion to remand,

24   and GRANTS in part and DENIES in part Defendant's motion to dismiss.

25
26
27

28

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    BACKGROUND

## A. Factual Background

This case arises out of an alleged defect in the "Ultra Slim" wall mounts manufactured by Defendant beginning in 2009.  Compl. ¶ 8.  Ultra Slim wall mounts—models WMN1000A, WMN1000B, WMN1000C, WMN2000A, WMN2000B, WMN2000C, WMN3000A, WMN3000B, and WMN3000C—are designed to hang various flat panel televisions on the wall. *Id.* ¶ 11.  Hanging a television with an Ultra Slim wall mount involves screwing two plastic disks onto the back of the television. *Id.* ¶¶ 9, 21.  The plastic disks hold a metal cable between them. After the plastic disks and cable are attached to the television, the cable is hung onto two metal disks that are screwed into the wall. *Id.* ¶¶ 9–10.  The television thus hangs from the cable, which hangs from the two wall-mounted metal disks. *Id.*

Each Ultra Slim wall mount package is labeled with the "safe working load" (the weight that the wall mount can safely lift without breaking), and the "minimum breaking load" (the minimum strength of a product when tested to failure), as well as with the televisions with which the wall mount is compatible. *See id.* ¶ 12 (examples of Ultra Slim wall mount packaging); ECF No. 16 ("Mot. Dismiss"), at 5 nn. 1–2 (explaining packaging terms).  However, "[t]he plastic disks [in Ultra Slim wall mounts] . . . break under the regular pressure of holding a Samsung television of the appropriate weight and size, as stated on the package."  Compl. ¶ 13.

When the plastic disks in an Ultra Slim wall mount break, the television falls off of the wall mount. *Id.*  A falling television "presents a serious safety hazard to those nearby, including children and pets." *Id.* ¶ 14.  Indeed, falling televisions have caused over 150 fatalities between 2000 and 2013, and over 15,000 injuries requiring emergency-room treatment between 2011 and 2013. *Id.* ¶¶ 14–15.  In addition to the safety risks, falling televisions cause damage to both the television and any items that the television hits, including stereo systems, video game consoles, and furniture. *Id.* ¶ 17.  Because televisions "typically cost thousands of dollars," the damage to a television from a fall "is often too expensive to repair" and the television has to be replaced. *Id.*

According to Plaintiff, Defendant knew of, yet failed to disclose, the defect in the plastic disks of Ultra Slim wall mounts. *Id.* ¶¶ 18–19. Since at least 2012, purchasers of Ultra Slim wall mounts have reported on Amazon.com the plastic disk failures in their Ultra Slim wall mounts. *Id.* ¶ 18 (listing 11 consumer complaints from Amazon.com). Many of these consumers expressed concern that the failure of the Ultra Slim wall mount posed a safety risk due to the falling of the television mounted on the Ultra Slim wall mount. *Id.* Plaintiff alleges that "[i]t is likely that [Defendant] knew that its wall mounts were prone to failure well before 2012, as the complaints above demonstrate, Ultra Slim wall mounts can break at any time after installation." *Id.* ¶ 19.

In September 2010, Plaintiff purchased an Ultra Slim wall mount (model WMN1000C) to hang her $3,200 television. *Id.* ¶ 21. On January 7, 2016, one of the Ultra Slim wall mount's plastic disks failed, causing Plaintiff's television to fall off of the wall and break. *Id.* ¶ 22. Although Plaintiff contacted Defendant, Defendant refused to repair the television. *Id.* ¶ 23.

**B. Procedural Background**

On April 29, 2016, Plaintiff filed the instant complaint in Santa Clara County Superior Court seeking to represent a putative class of "[a]ll persons who purchased a Samsung Ultra Slim wall mount in California." Compl. ¶ 24. The complaint asserts six causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (3) breach of implied warranties under the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), Cal. Civ. Code § 1790 *et seq.*; (4) strict liability for design defect; (5) strict liability for failure to warn; and (6) negligence. Plaintiff requests that Defendant "[r]eimburse class members who have already incurred personal injury or damage to property as a result of Ultra Slim wall mount failures," "[r]epair or replace Samsung televisions that have been damaged by Ultra Slim wall mount failures," and "[r]eimburse or refund Plaintiff and all Ultra Slim wall mount purchasers the amount they paid to purchase the wall mounts." However, Plaintiff does not specify an amount of damages. Plaintiff also seeks restitution, disgorgement of profits, attorney's

3

United States District Court
Northern District of California

1    fees and costs, and declaratory and injunctive relief.

2           On June 1, 2016, Defendant removed the case to this Court based on CAFA jurisdiction.

3    ECF No. 1.  On July 1, 2016, Plaintiff filed the instant motion to remand.  ECF No. 13 ("Mot.

4    Remand").  Defendant opposed the motion to remand on July 28, 2016.  ECF No. 25 ("Remand

5    Opp.").  That same day, Defendant filed a request for judicial notice.  ECF No. 25-2.  Plaintiff

6    replied on August 4, 2016.  ECF No. 29 ("Remand Reply").

7           On July 5, 2016, Defendant moved to dismiss, ECF No. 16 ("Mot. Dismiss"), and filed a

8    request for judicial notice.  ECF No. 16-1.[1]  On August 2, 2016, Plaintiff opposed the motion to

9    dismiss.  ECF No. 27 ("Dismiss Opp.").  Defendant replied on August 16, 2016.  ECF No. 34.

10   **II.     LEGAL STANDARD**

11      **A. Motion to Remand**

12          A suit may be removed from state court to federal court only if the federal court would

13   have had subject matter jurisdiction over the case in the first instance.  28 U.S.C. § 1441(a); *see*

14   *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally

15   could have been filed in federal court may be removed to federal court by the defendant.").  "In

16   civil cases, subject matter jurisdiction is generally conferred upon federal district courts either

17   through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C.

18   § 1331."  *Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005).  If it appears at any

19   time before final judgment that the federal court lacks subject matter jurisdiction, the federal court

20

21   ─────────────────

22   [1] The Court GRANTS Defendant's two unopposed requests for judicial notice.  ECF Nos. 16-1, 25-2.  In support of Defendant's motion to dismiss, Defendant requests judicial notice of four

23   publications cited by the complaint.  ECF No. 16-1; *see also* Compl. ¶¶ 14–16 (describing the contents of four publications).  The complaint relies on these documents, and the documents'

24   authenticity and relevance are uncontested.  Accordingly, the Court may consider the documents under the doctrine of incorporation by reference.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

25      In support of Defendant's motion to remand, Defendant requests judicial notice of data produced by the U.S. Census Bureau.  This data "can be accurately and readily determined from sources

26   whose accuracy cannot reasonably be questioned" and thus is judicially noticeable.  Fed. R. Evid. 201(b); *see also United States v. Dreyer*, 767 F.3d 826, 834 n.12 (9th Cir. 2014) ("We may

27   properly take judicial notice of United States Census Bureau data . . . .").

                                                         4
28   Case No. 16-CV-02941-LHK
     ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    must remand the action to state court.  28 U.S.C. § 1447(c).

2             There is no presumption against removal jurisdiction in CAFA cases.  *See Dart Cherokee*

3    *Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (vacating district court's remand

4    order in putative class action on the ground that "a defendant's notice of removal need include

5    only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

6    The defendant, however, still bears the burden of establishing removal jurisdiction.  *See id.*  A

7    notice of removal must contain a "short and plain statement of the grounds for removal," a

8    requirement that tracks the general pleading standard of Rule 8(a) of the Federal Rules of Civil

9    Procedure.  *Id.* at 553 (citing 28 U.S.C. § 1446(a)).

10    **B.  Rule 12(b)(1)**

11             A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

12    to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  While lack of statutory standing requires

13    dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires

14    dismissal for want of subject matter jurisdiction under Rule 12(b)(1).  *See Maya v. Centex Corp.*,

15    658 F.3d 1060, 1067 (9th Cir. 2011).  "A Rule 12(b)(1) jurisdictional attack may be facial or

16    factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack,

17    the challenger asserts that the allegations contained in a complaint are insufficient on their face to

18    invoke federal jurisdiction."  *Id.*  The Court "resolves a facial attack as it would a motion to

19    dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all

20    reasonable inferences in the plaintiff's favor, the court determines whether the allegations are

21    sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117,

22    1121 (9th Cir. 2014).  "[I]n a factual attack," on the other hand, "the challenger disputes the truth

23    of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for*

24    *Everyone*, 373 F.3d at 1039.  "In resolving a factual attack on jurisdiction," the Court "may review

25    evidence beyond the complaint without converting the motion to dismiss into a motion for

26    summary judgment."  *Id.*

27

28    Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

Once a defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff carries that burden by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. EPA*, 633 F.3d 894, 899 (9th Cir. 2011).

### C. Rule 12(b)(6) Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept [s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1  allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam).  Mere

2  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

3  dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

4    **D.  Rule 9(b)**

5        Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

6  Federal Rule of Civil Procedure 9(b), which require that a plaintiff alleging fraud "state with

7  particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see also Kearns v. Ford*

8  *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To satisfy the heightened standard under Rule

9  9(b), the allegations must be "specific enough to give defendants notice of the particular

10  misconduct which is alleged to constitute the fraud charged so that they can defend against the

11  charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d

12  727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time,

13  place, and specific content of the false representations as well as the identities of the parties to the

14  misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)

15  (internal quotation marks omitted).  "A plaintiff must set forth what is false or misleading about a

16  statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)

17  (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216

18  (9th Cir. 2011).  However, "intent, knowledge, and other conditions of a person's mind" need not

19  be stated with particularity, and "may be alleged generally."  Fed. R. Civ. P. 9(b).

20    **E.  Leave to Amend**

21        If the Court concludes that the complaint should be dismissed, it must then decide whether

22  to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to

23  amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

24  of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

25  technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (ellipsis in original).

26  Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith

27

28  Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

2    previously allowed, undue prejudice to the opposing party by virtue of allowance of the

3    amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d

4    522, 532 (9th Cir. 2008).

5    **III.   DISCUSSION**

6    The Court first addresses Plaintiff's motion to remand.  Because the Court concludes that

7    remand is unwarranted, the Court then considers Defendant's motion to dismiss.

8    **A.  CAFA Jurisdiction**

9    CAFA gives federal courts jurisdiction over certain class actions if (1) "the class has more

10   than 100 members"; (2) "the parties are minimally diverse"; and (3) "the amount in controversy

11   exceeds $5 million." *Dart Cherokee*, 135 S. Ct. at 552 (citing 28 U.S.C. § 1332(d)(2), (5)(B)).  Of

12   these requirements, Plaintiff challenges only Defendant's contention that the amount in

13   controversy exceeds $5 million.  *See* Mot. Remand at 1 & n.1.

14   Where, as here, the amount in controversy is contested and the complaint does not plead a

15   specific amount in controversy, the proponent of federal jurisdiction must establish the amount in

16   controversy by a preponderance of the evidence.  *Rodriguez v. AT & T Mobility Servs. LLC*, 728

17   F.3d 975, 981 (9th Cir. 2013); *see also Dart Cherokee*, 135 S. Ct. at 554 ("Evidence establishing

18   the amount [in controversy] is required . . . only when the plaintiff contests, or the court questions,

19   the defendant's allegation.").  Under the preponderance of the evidence standard, the removing

20   party must "provide evidence establishing that it is more likely than not that the amount in

21   controversy exceeds [the jurisdictional amount]."  *Sanchez v. Monumental Life Ins. Co*., 102 F.3d

22   398, 404 (9th Cir. 1996) (internal quotation marks omitted).

23   In determining whether the removing party has satisfied this burden, the district court may

24   consider facts in the removal petition and "summary-judgment-type evidence relevant to the

25   amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193,

26   1197 (9th Cir. 2015).  Mere conclusory allegations are insufficient, as are "speculative and self-

27

28
Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

serving assumptions." *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). The court must assume that the allegations of the complaint are true, and that a jury will return a verdict for the plaintiff on all claims made. *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis omitted) (citing *Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)). "[T]he claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6).

To demonstrate the amount in controversy in the instant case, Defendant offers three calculations: (1) the cost of reimbursing or refunding the price of the allegedly defective Ultra Slim wall mounts; (2) the damages for televisions that fell and broke as a result of the failure of the Ultra Slim wall mounts; and (3) anticipated attorney's fees. Defendant also highlights that Plaintiff seeks additional relief, including injunctive relief. Because the Court concludes that Defendant's first two calculations put at least $5 million in controversy, the Court need not analyze additional calculations.

### 1.   Reimbursement or Refund of the Price of Ultra Slim Wall Mounts

In the complaint, Plaintiff requests that Defendant "[r]eimburse or refund Plaintiff and all Ultra Slim wall mount purchasers the amount they paid to purchase the wall mounts." *See* Compl. at 19. Defendant estimates that this demand puts ▮▮▮▮▮ in controversy. To make this estimate, Defendant relies on a declaration from Director of Visual Display Product Support Ilhyun Ryu, who supervises product quality and reviewed Defendant's financial and sales information regarding the Ultra Slim wall mounts. ECF No. 24-6 ("Ryu Decl.").

In the Ryu Declaration, Defendant represents that Defendant sold approximately ▮▮▮▮▮ Ultra Slim wall mounts in the United States during the class period. *Id.* ¶ 2. Although the complaint includes allegations about nine models of Ultra Slim wall mount—WMN1000A,

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    WMN1000B, WMN1000C, WMN2000A, WMN2000B, WMN2000C, WMN3000A,

2    WMN3000B, and WMN3000C—two models (███████████████████) were not sold in

3    the United States during the class period, and are excluded from Defendant's calculations.  *Id.*

4    Because California comprises approximately 11% of the U.S. retail market, Defendant estimates

5    that █████ Ultra Slim wall mounts of seven different models were sold in California from 2009 to

6    2015.  *Id.* ¶¶ 3, 5.  Plaintiff does not challenge Defendant's estimate of █████ Ultra Slim wall

7    mounts sold.

8           Next, Defendant calculates the average price for each Ultra Slim wall mount model

9    according to ████████████████████████████████████ Ultra Slim Wall

10   Mounts sold between 2009 and 2015."  *Id.* ¶ 4.  For example, Defendant estimates that from 2009

11   to 2015 Defendant sold ████ WMN3000C Ultra Slim wall mounts, at an average price of ████ per

12   wall mount.  During that same time period, Defendant sold █████ WMN2000A Ultra Slim wall

13   mounts, at an average price of █████ per wall mount.  *Id.*  As another example, Defendant sold

14   █████ WMN1000C Ultra Slim wall mounts, at an average price of █████ per wall mount.  *Id.*

15   Using the average prices and sales volumes of the seven Ultra Slim wall mount models sold in the

16   United States from 2009 to 2015, Defendant calculates that █████ per wall mount reflects the

17   "weighted average of [Defendant's] best estimation of [the] retail price of the Ultra Slim Wall

18   Mounts" across all seven models.  *Id.* ¶ 4.  Multiplying the average cost per wall mount (█████) by

19   the number of wall mounts sold in California (█████), Defendant calculates that refunding all

20   class members' wall mounts would cost approximately ██████████.  *Id.* ¶ 5.

21          Plaintiff challenges Defendant's reliance on the ██████████████████████

22   ████████.  According to Plaintiff, Defendant's ██████████████ do not necessarily reflect the actual

23   price paid for an Ultra Slim wall mount.  Remand Reply at 6.  Plaintiff cites the website

24   "CamelCamelCamel," which "purports to track the prices of goods offered for sale on

25   Amazon.com."  ECF No. 29-1 ("Lopez Decl.").  According to CamelCamelCamel, the average

26   historic price on Amazon.com of the Ultra Slim wall mount WMN1000C is $200.43, while the

27

28

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

1   average price of the same model from unnamed third-party retailers is $94.03.  *Id.* ¶¶ 3–4.

2   Because these numbers are lower than Defendant's average price of WMN1000C models (███),

3   Plaintiff contends that Defendant's weighted average price across all models is speculative.

4        The Court credits the evidence offered by Defendant regarding the estimated price of Ultra

5   Slim wall mounts.  The weighted average retail price reflects Defendant's "best estimation of

6   actual retail price," Ryu Decl. ¶ 4, and Defendant has the knowledge and expertise to make such

7   an estimate.  *See Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22,

8   2013) (crediting evidence presented by the defendant's vice president of store operations and a

9   director of payroll services, who "appear to have the requisite knowledge to provide this

10  information").  Additionally, the average weighted price relies on records and sales data kept in

11  the regular course of Defendant's business.  Ryu Decl. ¶¶ 1, 4.  These sources are sufficiently

12  credible.  *See Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (crediting

13  evidence from the defendant's human resources department, including time and payroll records).

14       Further, the Court is not convinced of the reliability of Plaintiff's data from

15  CamelCamelCamel, which is a website that Plaintiff describes as "*purport[ing]* to track the prices

16  of goods offered for sale on Amazon.com."  Lopez Decl. ¶ 2.  Plaintiff provides no explanation of

17  CamelCamelCamel's methodology or its reliability.  *See generally id.*  Moreover, Plaintiff offers

18  CamelCamelCamel data from just one Ultra Slim wall mount model.  Plaintiff fails to show that

19  consumers generally pay less than Defendant's ███ price, and does not allege that

20  Amazon.com is representative of all places that sell Ultra Slim wall mounts.  Thus, Plaintiff's

21  reliance on CamelCamelCamel does not undermine Defendant's evidence of the average weighted

22  price of Ultra Slim wall mounts.

23       Multiplying Defendant's average weighted price (███) by the uncontested number of

24  Ultra Slim wall mounts sold in California during the class period (███) yields slightly more

25  than ███.  Thus, the Court finds that Defendant has shown by a preponderance of the

26  evidence that Plaintiff's request for a reimbursement or refund of the price of all Ultra Slim wall

27

28  Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

11

1    mounts puts ███████ in controversy.

2        **2.  Damages to Televisions**

3        In addition to a reimbursement or refund for the Ultra Slim wall mounts, Plaintiff requests

4    that Defendant "[r]epair or replace Samsung televisions that have been damaged by Ultra Slim

5    wall mount failures."  Compl. at 19.  Defendant offers three separate calculations of the amount

6    that this request puts in controversy.  Plaintiff does not dispute any of the numbers in one of

7    Defendant's calculations, which results in ██████ in controversy.  Added to the ██████ in

8    potential damages for reimbursing or refunding the price of Ultra Slim wall mounts, ████████

9    would meet CAFA's jurisdictional requirement.  Accordingly, the Court considers only the ██

10   ██████ calculation, and need not consider the other two calculations.[2]

11       Defendant's ██████ calculation has three components: (1) the number of Ultra Slim

12   wall mounts sold in California; (2) the average price per television compatible with Ultra Slim

13   wall mounts; and (3) the failure rate of Ultra Slim wall mounts.  Plaintiff does not dispute any of

14   these three components, which the Court addresses respectively.

15       First, Defendant offers the Ryu Declaration to prove that ██████ Ultra Slim wall mounts

16   were sold in California from 2009 to 2015.  Ryu Decl. ¶¶ 3, 5.  Plaintiff does not dispute this

17   number.  Accordingly, the Court credits Defendant's unchallenged evidence establishing the

18   number of Ultra Slim wall mounts sold in California from 2009 to 2015.  *See Arreola*, 2014 WL

19   6982571, at *4 (crediting evidence from the defendant's human resources department, including

20   time and payroll records).

21       Next, Defendant cites the Ryu Declaration to show that Defendant's "best estimation of

22   retail price of all television models compatible with the Ultra Slim Wall Mounts sold between

---

[2] As to Defendant's other two calculations, Defendant first argues that reasonable assumptions based only on the face of the complaint show that the potential cost of repairing or replacing class members' broken televisions is $6.4 million.  Second, Defendant offers evidence to show the average price of televisions compatible with Ultra Slim wall mounts, and assumes that 100% of Ultra Slim wall mounts failed and resulted in broken televisions.  This calculation results in ███ ██████ in potential liability to repair or replace the broken televisions.

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    2009 and 2015 is ████" per television.  Ryu Decl. ¶ 6.  Plaintiff also does not dispute this

2    number.  Accordingly, the Court credits Defendant's undisputed evidence.  *See Arreola*, 2014 WL

3    6982571, at *4 (crediting evidence from the defendant's human resources department, including

4    time and payroll records).  Further, the Court notes that Plaintiff does not dispute that every Ultra

5    Slim wall mount failure results in a broken television that puts the entire television price in

6    controversy.  *See generally* Remand Reply; *see also* Compl. ¶¶ 13–16, 22 (failure of an Ultra Slim

7    wall mount causes the television to fall off the mount); *id.* ¶ 17 (alleging that televisions damaged

8    as a result of Ultra Slim wall mount failure often must be replaced completely).

9             Third, Defendant conservatively assumes that 3% of Ultra Slim wall mounts failed and

10   resulted in broken televisions.  *See* Remand Opp. at 11.  Plaintiff does not dispute this failure rate.

11            Nonetheless, the Court must still consider the reasonableness of the 3% failure rate.  When

12   a defendant removing an action under CAFA makes assumptions when calculating the amount in

13   controversy, the "assumptions must be reasonable ones."  *LaCross v. Knight Transp. Inc.*, 775

14   F.3d 1200, 1202 (9th Cir. 2015); *see also Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at

15   *5 (N.D. Cal. June 14, 2013) (collecting cases where defendant permissibly assumed that each

16   member of the class experienced some type of violation).  Such assumptions are based on the

17   principle that a "plaintiff [is] the master of the claim" and may avoid federal jurisdiction by

18   pleading different facts.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  In addition,

19   courts emphasize that "a removing defendant is *not* obligated to research, state, and prove the

20   plaintiff's claims for damages."  *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148

21   (C.D. Ca. 2010) (internal quotation marks omitted).  Therefore, the issue here becomes whether

22   Defendant's 3% assumption is "reasonable in light of the allegations in [Plaintiff's] complaint."

23   *Altamirano*, 2013 WL 2950600, at *6.

24            Plaintiff does not dispute the reasonableness of Defendant's 3% assumption.  The Court

25   agrees that the assumption is reasonable, and finds *Branch v. PM Realty Grp., L.P.*, — F. App'x

26   —, 2016 WL 1298017 (9th Cir. 2016), instructive.  In *Branch*, the plaintiff alleged that the

27

28

13

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

1    defendant failed to provide meal and rest breaks to employees as required by law.  In a

2    declaration, the plaintiff stated that the plaintiff and class members "frequently" had interrupted

3    meal breaks and "rarely" took rest breaks.  The defendant assumed that two meal and two rest

4    break violations occurred per workweek per putative class member.  *Id.* at *1.  The district court

5    concluded that the assumption of two meal and two rest break violations per week was

6    unreasonable because the evidence said "nothing of the frequency of which [the defendant] would

7    deprive class members of their entitled meal periods or rest periods."  *Id.* at *2.  The Ninth Circuit

8    reversed.  Given the evidence of extensive meal and rest break violations, the Ninth Circuit

9    concluded that the defendant's "extrapolated violation rate" of two meal period violations per

10   week (40% violation rate, given the number of meal periods the class members should have taken)

11   and two rest break violations per week (20% violation rate) was reasonable.  *Id.*

12           In the instant case, the Court finds that Defendant's assumed 3% failure rate is reasonable

13   in light of the allegations of the complaint.  Similar to *Branch*, Plaintiff's complaint does not

14   specify the frequency of Ultra Slim wall mount failure, but does indicate that failure was frequent.

15   In particular, Plaintiff alleges that her television was damaged and that "Plaintiff's claims are

16   typical of the claims of the proposed class."  Compl. ¶¶ 22, 26(c).  Moreover, the complaint asserts

17   that "Ultra Slim wall mounts are susceptible to breaking at any time."  *Id.* ¶ 13.  Further, the

18   complaint alleges that "Plaintiff[] and the members of the California class have been damaged . . .

19   because wall mount failures *have damaged their televisions* and other property" and "Plaintiff and

20   members of the proposed California Class *suffered damages, including to their televisions.*"  *Id.*

21   ¶¶ 51, 58 (emphases added); *see also id.* ¶ 50; ("Plaintiff and the proposed California Class

22   members have been harmed because wall mount failures have damaged their televisions and other

23   property."); *id.* ¶ 66 ("Plaintiff and members of the proposed California Class suffered damages,

24   including to their televisions.").  The Court assumes the truth of these allegations, which suggest

25   that Plaintiff and many, if not all, putative class members have suffered damage to their televisions

26   due to the failure of an Ultra Slim wall mount.  *See Kenneth Rothschild Tr.*, 199 F. Supp. 2d at

27

28   Case No. 16-CV-02941-LHK
     ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1001.  Thus, the Court finds that it is reasonable to conservatively assume a 3% failure rate for purposes of determining the amount in controversy.

Multiplying the undisputed number of Ultra Slim wall mounts sold in California during the class period (███████) by an undisputed 3% failure rate (███ failed wall mounts), and then by the undisputed price of the televisions damaged by the failure (███████) results in over ██████████ to repair or replace class members' broken televisions.  Added to the ██████ in potential damages for reimbursing or refunding the price of Ultra Slim wall mounts, Defendant proves ███████ in controversy by a preponderance of the evidence.  Accordingly, the Court DENIES Plaintiff's motion to remand.

The Court next considers Defendant's motion to dismiss.  The Court first addresses Plaintiff's standing under Article III of the U.S. Constitution.  The Court then considers Plaintiff's claim under the CLRA; the Song-Beverly Act; and the UCL; followed by Plaintiff's claims for strict liability for failure to warn, strict liability for design defect, and negligence.

**B.  Standing**

Defendant first contends that Plaintiff lacks Article III standing to assert claims related to Ultra Slim wall mount models that she did not purchase.[3]  Mot. Dismiss at 22–24.  Defendant does not challenge Plaintiff's standing to sue regarding the Ultra Slim wall mount that Plaintiff did purchase (WMN1000C).  To satisfy Article III standing, a plaintiff must allege that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  In the instant case, Defendant specifically argues that Plaintiff did not suffer injury in fact with respect to products that Plaintiff did not purchase.

The majority of the courts in this district and elsewhere in California reject the proposition that a plaintiff can not suffer injury in fact based on products that the plaintiff did not buy.  Some

---

[3] Models WMN1000A, WMN1000B, WMN2000A, WMN2000B, WMN2000C, WMN3000A, WMN3000B, and WMN3000C.

15

courts decline to address this issue until ruling on a motion for class certification, *see, e.g.*,

*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161–62 (C.D. Cal. 2012); *Cardenas v. NBTY,*

*Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012), while others "hold that a plaintiff may have

standing to assert claims for unnamed class members based on products he or she did not purchase

so long as the products and alleged misrepresentations are substantially similar," *Miller v.*

*Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (citing cases); *see also,*

*e.g.*, *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012);

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *11–13 (N.D. Cal. July 20,

2012).  In either case, these courts allow a plaintiff to proceed past the motion to dismiss stage

with claims based on products that a plaintiff did not purchase, at least so long as the products and

claims at issue are "substantially similar."[4]

This Court has consistently applied the "substantially similar" approach when analyzing

standing challenges in the food-misbranding context, *see, e.g.*, *Bruton v. Gerber Prods. Co.*, 2014

WL 172111, at *8 (N.D. Cal. Jan. 15, 2014); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *10–11

(N.D. Cal. Sept. 19, 2013); *Brazil v. Dole Food Co.*, 2013 WL 5312418, at *7–8 (N.D. Cal. Sept.

23, 2013), and recently applied the same approach in a products liability case, *Philips v. Ford*

*Motor Co.*, 2015 WL 4111448, at *6 (N.D. Cal. July 7, 2015).  As explained in these prior orders,

"in asserting claims based on products a plaintiff did not purchase, but which are nevertheless

substantially similar to products a plaintiff *did* purchase, a plaintiff is not suing over an injury she

did not suffer.  Rather, a plaintiff in that scenario is suing over an injury she personally suffered

and asserting that others who purchased similar products suffered substantially the same injury,

even if the products that caused the injury were not identical in every respect." *Bruton*, 2014 WL

---

[4] This is admittedly not the universal view in this district.  Some courts have dismissed claims for lack of standing when the plaintiff did not purchase the product on which the claim is based.  *See, e.g.*, *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011), *aff'd on other grounds*, 475 F. App'x 113 (9th Cir. 2012).

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

172111, at *8.

Moreover, this Court has previously explained that the substantially similar approach is consistent with the Ninth Circuit's admonition that courts "should not be too rigid in applying standing requirements to proposed classes." *Brazil*, 2013 WL 5312418, at *4 (quoting *Lanovaz v. Twining's N. Am., Inc.*, 2013 WL 2285221, at *2 (N.D. Cal. May 23, 2013)). In particular, when evaluating whether a plaintiff has standing to sue on behalf of others who have suffered similar, but not identical injuries, the Ninth Circuit has held that in "determining what constitutes the same type of relief or the same kind of injury, we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Id.* (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

In the instant case, Defendant does not draw any distinction between the instant case and the cases in which this Court applied the substantially similar approach. *See generally* Mot. Dismiss at 22–24. Nor does Defendant attack the reasoning of the Court's prior orders. Further, Defendant does not dispute that the Ultra Slim wall mount models alleged in the complaint are substantially similar to the Ultra Slim wall mount purchased by Plaintiff. Accordingly, the Court rejects Defendant's contention that Plaintiff lacks Article III standing to sue over substantially similar products merely because Plaintiff did not personally purchase every model of Ultra Slim wall mount alleged in the complaint. Thus, the Court DENIES Defendant's motion to dismiss Plaintiff's claims based on products that Plaintiff did not purchase. The Court next considers the merits of Plaintiff's individual causes of action.

**C. CLRA**

The Court first addresses Plaintiff's claim under the CLRA. Plaintiff alleges that Defendant violated the CLRA in two ways: (1) failing to disclose the Ultra Slim wall mounts' propensity to fail when used properly; and (2) misrepresenting the load-bearing capacity of the

17

1  Ultra Slim wall mounts on the wall mounts' packaging.  Compl. ¶¶ 40–41.  Defendant contends

2  that Plaintiff lacks statutory standing under the CLRA because Plaintiff fails to allege that she

3  relied upon any omissions or misrepresentations by Defendant.  In addition, Defendant moves to

4  dismiss Plaintiff's fraudulent omission and affirmative misrepresentation theories for failing to

5  state a claim.  The Court addresses Defendant's arguments in turn.

6      **1.  Reliance**

7        To have statutory standing under the CLRA, a plaintiff must allege that she relied on the

8  defendant's alleged misrepresentation.  *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350,

9  1367 (2010) (holding that plaintiff's CLRA claim failed because plaintiff failed to allege facts

10  showing that he "relied on any representation by" defendant).  To establish reliance, a plaintiff

11  must allege that "the defendant's misrepresentation or nondisclosure was 'an immediate cause' of

12  the plaintiff's injury-producing conduct."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

13  "A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the

14  plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would

15  not have engaged in the injury-producing conduct."  *Id.* (quoting *Mirkin v. Wasserman*, 5 Cal. 4th

16  1082, 1110–11 (1993)).  In other words, a plaintiff may show actual reliance by alleging that "had

17  the omitted information been disclosed, one would have been aware of it and behaved differently."

18  *Mirkin*, 5 Cal. 4th at 1093; *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir.

19  2015) (finding that plaintiffs had sufficient evidence of reliance to survive summary judgment

20  when plaintiffs offered "a plausible method of disclosure and . . . that they would have been aware

21  of information disclosed using that method").

22        Here, the gravamen of Plaintiff's CLRA claim is that Defendant's Ultra Slim wall mount

23  packaging contains false representations and omissions.  However, the complaint does not allege

24  that Plaintiff relied upon, or even saw, any representations on Ultra Slim wall mount packaging.

25  *See generally* Compl.  In addition, Plaintiff does not allege that she used the Ultra Slim wall

26  mount as directed on the packaging, which may give rise to an inference of reliance.  According to

27

28  Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

the example packaging provided in the complaint, the WMN1000C Ultra Slim wall mount is "suitable for 60–65" Samsung LED televisions (5000 series and above) and 58–63" PDP televisions (850 series and the 6000 series and above)," and has a 110 pound "safe working load." *Id.* ¶ 12.  Plaintiff alleges that she bought a WMN1000C Ultra Slim wall mount for the "63-inch plasma Samsung television that she had recently purchased."  *Id.* ¶ 21.  However, Plaintiff fails to allege that her television was "LED" or "PDP"; the "series" number of the television; or that the television weighed less than the advertised safe working load.

Although Plaintiff asserts in the opposition to the motion to dismiss that Plaintiff purchased a "63-inch 8000 series Samsung PDP TV," Dismiss Opp. at 5, Plaintiff can not avoid dismissal by alleging new facts in an opposition, *see Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").  Based on the allegations in the complaint, the Court can not infer that Plaintiff relied upon any representations on, or omissions from, the packaging of Ultra Slim wall mounts.  *See Punian v. Gillette Co.*, 2015 WL 4967535, at *8 (N.D. Cal. Aug. 20, 2015) (finding plaintiff alleged reliance when plaintiff "saw the deceptive . . . package label prior to purchasing" the product, believed the representation on the package, was reasonable in relying on the package, and would not have purchased the product had the packaging not been deceptive).

Because Plaintiff fails to allege reliance on any misrepresentation or omission of Defendant, Plaintiff lacks statutory standing under the CLRA, and the Court GRANTS Defendant's motion to dismiss.  This dismissal is with leave to amend as Plaintiff may be able to allege reliance through additional facts.  *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts").

Nevertheless, in anticipation that Plaintiff will file a First Amended Complaint, the Court

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    identifies other deficiencies in Plaintiff's CLRA claim.  The Court first addresses Plaintiff's

2    fraudulent omission theory, then Plaintiff's affirmative misrepresentation theory.

3            **2.  Fraudulent Omission**

4            Plaintiff alleges that Defendant fraudulently failed to disclose the Ultra Slim wall mounts'

5    propensity to fail.  To state a valid claim for a fraudulent omission under the CLRA, Plaintiff must

6    allege "an omission of a fact the defendant was obliged to disclose."  *Daugherty v. Am. Honda*

7    *Motor Co.*, 144 Cal. App. 4th 824, 835 (2006).  "California federal courts have generally

8    interpreted *Daugherty* as holding that '[a] manufacturer's duty to consumers is limited to its

9    warranty obligations absent either an affirmative misrepresentation or a safety issue.'"  *Wilson v.*

10   *Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Oestreicher v. Alienware*

11   *Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009)).  In addition, "plaintiffs must sufficiently allege that

12   a defendant was aware of a defect at the time of sale to survive a motion to dismiss."  *Id.* at 1145.

13           Defendant argues that Plaintiff's fraudulent omission claim is legally insufficient for two

14   reasons: (1) Plaintiff fails to sufficiently plead that Defendant had a duty to disclose any defect in

15   Ultra Slim wall mounts; and (2) Plaintiff fails to sufficiently plead that Defendant had knowledge

16   of the defect at the time of sale.  The Court addresses these arguments respectively.

17           **a.  Duty to Disclose**

18           The parties appear to agree that Plaintiff's Ultra Slim wall mount was not covered by any

19   written or express warranty from Defendant.  Thus, under California law, Defendant had no duty

20   to disclose a defect in Ultra Slim wall mounts unless the defect implicates "either an affirmative

21   misrepresentation or a safety issue."  *Wilson*, 668 F.3d at 1141.  Plaintiff asserts that the defective

22   Ultra Slim wall mounts pose a safety hazard because the failure of the wall mount results in the

23   television falling off of the wall mount, which poses a danger to anyone nearby.  Thus, Plaintiff

24   argues, Defendant had a duty to disclose the potential for Ultra Slim wall mounts to fail.

25           To support Plaintiff's claim of a safety hazard, Plaintiff alleges that the failure of an Ultra

26   Slim wall mount causes the television mounted on the wall mount—which can weigh over 80

27

28   Case No. 16-CV-02941-LHK
     ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

20

pounds—to fall.  Compl. ¶ 13.  Plaintiff highlights various studies, including by the Consumer

Product Safety Commission, that document injuries and fatalities caused by falling televisions.  *Id.*

¶¶ 14–16.  Plaintiff also offers various consumer complaints posted to Amazon.com, in which

customers expressed safety concerns with respect to the failure of Ultra Slim wall mounts.  For

example, "mseanmcgee" wrote on August 16, 2013 that the Ultra Slim wall mount snapped and

dropped the television onto the floor, and stated, "Luckily no one was home - no kids or dogs were

hurt."  *Id.* ¶ 18.  As another example, "Kirk Bond" stated on January 23, 2016, that his Ultra Slim

wall mount broke and "If someone had been near [the television falling from the wall mount], they

could have been seriously injured."  *Id.*  Thus, Plaintiff asserts that the failure of an Ultra Slim

wall mount poses the risk of physical injury.

Defendant counters that Plaintiff's allegations are insufficient because the Consumer

Product Safety Commission report and other studies cited by Plaintiff considered televisions

sitting on furniture, not mounted on a wall.  Mot. Dismiss at 13–14.  The Court is not persuaded.

The studies cited by Plaintiff address the risks of falling televisions generally, and, for example,

indicate that falling televisions may crush or strike a bystander.  *See* ECF No. 16-1 Ex. A.  These

same risks of physical injury are plausibly present when a television falls off a wall.

Moreover, the fact that Plaintiff and the individuals posting on Amazon.com did not

themselves suffer physical injury "does not alter the conclusion that the [complaint] plausibly

alleges that the alleged defect could pose a safety hazard, which is all that is necessary to survive a

motion to dismiss."  *Butler v. Porsche Cars N.A., Inc.*, 2016 WL 4474630, at *4 (N.D. Cal. Aug.

25, 2016); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1236 (C.D. Cal. 2011)

(finding that the plaintiff sufficiently alleged a safety hazard based on defects that could result in

sudden engine failure while the car was in motion even though the complaint lacked any allegation

that the plaintiff or any class member had ever experienced sudden engine failure while driving).

Accordingly, the Court concludes that Plaintiff's allegations regarding the risk of physical injury

suffice to allege a material safety hazard and a duty to disclose.  *See Cholakyan*, 796 F. Supp. 2d

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

at 1236 (finding a plausible safety hazard when the alleged defect "causes sudden and unexpected engine failure that could result in personal injury or death"); *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997–98 (N.D. Cal. 2013) (determining that plaintiff plausibly alleged safety hazard because of "the inherent risks of physical injury" resulting from the defect).

### b.  Knowledge at Time of Sale

Defendant next argues that Plaintiff has not adequately pled that Defendant had knowledge of the alleged defect in September 2010, when Plaintiff purchased her Ultra Slim wall mount. "[U]nder the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect *at the time of sale* to survive a motion to dismiss." *Wilson*, 668 F.3d at 1145 (emphasis added).

To show that Defendant was aware of the defect in Ultra Slim wall mounts by September 2010, Plaintiff highlights the sampling of customer complaints posted on Amazon.com that describe the same defect that Plaintiff identifies—namely, the failure of the plastic disk component in Ultra Slim wall mounts.  Compl. ¶ 18.  Although these complaints were all posted after 2012, Plaintiff alleges that "[i]t is likely that [Defendant] knew that its wall mounts were prone to failure well before 2012, as the complaints above demonstrate, Ultra Slim wall mounts can break at any time after installation."  *Id.* ¶ 19.

Similar allegations of knowledge were rejected by the Ninth Circuit in *Wilson v. Hewlett-Packard Co.*  In *Wilson*, the plaintiffs asserted that the defendant was aware of a defect in its laptops based on fourteen customer complaints.  Twelve of the complaints were undated and two of the complaints—like those offered by Plaintiff in the instant case—were dated over two years after the plaintiffs' purchase of the allegedly defective laptops.  668 F.3d at 1148.  The plaintiffs also alleged that the defendant must have known of the defect due to the defendant's access to aggregate data regarding the risk of the defect.  *Id.* at 1147.  The Ninth Circuit found that such allegations "do not support an inference that [the defendant] was aware of the defect at the time it sold the Laptops to [the plaintiffs]."  *Id.* at 1147–48 ("express[ing] doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect"

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

because general allegations of consumer complaints "provide no indication whether the manufacturer was aware of the defect *at the time of sale*").

Similarly, this Court has previously held that while "in some cases, allegations of consumer complaints posted on a defendant's own customer support website may be sufficient to raise a reasonable inference that the defendant knew of a product defect," such cases must typically be supported by "an additional basis for defendant's knowledge" of a defect at the time of sale. *Kowalsky v. Hewlett-Packard Co. ("Kowalsky I")*, 771 F. Supp. 2d 1138, 1145–46 (N.D. Cal. 2010), *vacated in part on other grounds by Kowalsky v. Hewlett-Packard Co. ("Kowalsky II")*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011); *see also Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011) (plaintiff sufficiently alleged knowledge of a defect in support of CLRA cause of action where plaintiff claimed: (1) industry standards required multiple tests of defective product; (2) the defendant made specific claims as to the capacity and speed of its allegedly defective product; (3) the alleged product defect was present "out of the box" in every product and "manifested on a regular basis"; and (4) "consumers complained of the defect both in third-party fora as well as directly to [the defendant]"); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096–97 (N.D. Cal. 2007) (finding plaintiff adequately alleged knowledge of a defect where, in addition to alleging that consumers made complaints to defendant, the plaintiff also alleged the defendant had knowledge of other information showing a product defect at the time of sale, including "information unavailable to the public").

Here, Plaintiff's allegations of knowledge consist solely of consumer complaints that post-date Plaintiff's purchase of an Ultra Slim wall mount by two years.[5] Moreover, the consumer

---

[5] In opposition to Defendant's motion to dismiss, Plaintiff contends that it is reasonable to infer that Defendant knew of the defect in Ultra Slim wall mounts in light of Defendant's assumption, in opposition to Plaintiff's motion to remand, that 100% of Ultra Slim wall mounts have failed. Dismiss Opp. at 7. However, Defendant's assumption for purposes of showing the potential damages in controversy was not a concession on the merits of Plaintiff's claims. *See Bryan v. Wal-Mart Stores, Inc.*, 2009 WL 440485, at *2 (N.D. Cal. Feb. 23, 2009) (noting that for purposes of demonstrating the amount in controversy under CAFA, "[t]he Court must assume the truth of the allegations in the complaint and that a jury will return a verdict for the plaintiff on all claims alleged"). Moreover, Plaintiff ignores that, to state a CLRA claim, Defendant must have known of

23

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

complaints were not sent directly to Defendant, and Plaintiff does not allege that Defendant monitored or was otherwise aware of complaints posted to Amazon.com.  Accordingly, under Ninth Circuit precedent, Plaintiff fails to allege that Defendant was aware of any defect in Ultra Slim wall mounts at the time of the sale to Plaintiff.  *See Wilson*, 668 F.3d at 1147–48 (holding that two consumer complaints made two years after the plaintiffs' purchase were insufficient to allege that the defendant was aware of the defect at the time of sale).  Although the Court dismisses Plaintiff's CLRA claim based on lack of statutory standing, Plaintiff's failure to allege knowledge is an alternate, sufficient basis for dismissal.

### 3.  Affirmative Misrepresentation

In addition to a fraudulent omission theory, Plaintiff asserts that Defendant violated the CLRA because Ultra Slim wall mount packaging affirmatively misrepresents the weight and type of television that an Ultra Slim wall mount can safely hold.  Defendant moves to dismiss this claim on the grounds that Plaintiff fails to plead the affirmative misrepresentation with particularity, as required by Rule 9(b).

To satisfy Rule 9(b), Plaintiff must allege the "who, what, where, when, and how" and the "specific content of the false representations."  *Swartz*, 476 F.3d at 764.  Further, Plaintiff "must set forth what is false or misleading about a statement, and why it is false."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548.

In the instant case, Plaintiff fails to plead the "specific content of the false representations" and "when" the misrepresentations were made.  *Swartz*, 476 F.3d at 764.  In particular, Plaintiff does not allege the content of the representation on the packaging of Plaintiff's Ultra Slim wall mount.  Although the complaint provides examples of Ultra Slim wall mount packaging, the examples are undated and Plaintiff does not allege that the example packaging is the same as the packaging from Plaintiff's Ultra Slim wall mount, or that Defendant has made identical

---

the defect *at the time of the sale* to Plaintiff in September 2010.  *Wilson*, 668 F.3d at 1145.  Plaintiff cites nothing in Defendant's opposition to the motion to remand that indicates Defendant's knowledge in September 2010.

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

1   representations on all Ultra Slim wall mount packaging.  *See* Compl. ¶ 12.

2         In addition, Plaintiff fails to allege "what is false or misleading" about the Ultra Slim wall

3   mounts' packaging.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548.  According to Plaintiff,

4   the representations about the weight bearing capacity of the Ultra Slim wall mount and the

5   compatibility of certain televisions must be false because Plaintiff's Ultra Slim wall mount failed.

6   Dismiss Opp. at 5–6.  As discussed above, however, Plaintiff does not allege the weight of the

7   television that Plaintiff mounted on her Ultra Slim wall mount, or allege that the television used is

8   the model recommended on the Ultra Slim wall mount packaging.  *See* Compl. ¶ 12.  Without

9   such allegations, Plaintiff fails to allege that the representations on the Ultra Slim wall mount

10  packaging are false, and thus fails to state a CLRA claim for affirmative misrepresentation.

11  Although the Court dismisses Plaintiff's CLRA claim for lack of statutory standing, this provides

12  an alternate basis for dismissal.

13        **D.  The Song-Beverly Act**

14        Plaintiff's next cause of action is for breach of the implied warranty of merchantability

15  under the Song-Beverly Act.  Defendant moves to dismiss this claim on two grounds.  Mot.

16  Dismiss at 19–20.  First, Defendant claims that the claim is barred by the Song-Beverly Act's

17  "duration provision," which states that:

18        The duration of the implied warranty of merchantability and where present the
          implied warranty of fitness shall be coextensive in duration with an express
19        warranty . . . but in no event shall such implied warranty have a duration of less
          than 60 days *nor more than one year following the sale* of new consumer goods to
20        a retail buyer.

21  Cal. Civ. Code § 1791.1(c) (emphasis added).  The parties do not dispute that the one-year

22  duration provision applies in the instant case.  Second, Defendant argues that Plaintiff's Ultra Slim

23  wall mount must be fit for its ordinary purpose (and thus there was no breach of warranty) because

24  Plaintiff's Ultra Slim wall mount worked for six years before failing.

25        Both of Defendant's arguments were rejected by the California Court of Appeal in *Mexia*

26  *v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285 (Ct. App. 2009), a decision endorsed by the Ninth Circuit

27

28  Case No. 16-CV-02941-LHK
    ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
    DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

25

1    in *Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015).  In *Mexia*, plaintiff Jess Mexia

2    ("Mexia") sued Rinker Boat Company, Inc. ("Rinker") and Miller's Landing ("Miller") for breach

3    of the implied warranty of merchantability under the Song-Beverly Act.  95 Cal. Rptr. 3d at 287.

4    "In essence, Mexia alleged that he purchased from Miller a boat manufactured by Rinker that was

5    unmerchantable due to a latent defect, which . . . caused the boat's engine to corrode." *Id.*

6    According to Mexia, the boat was operational at the time of purchase in 2003.  However, by July

7    2005, significant "repairs to the boat were needed because of defects, nonconformities,

8    misadjustments or malfunctions relating to corrosion in the engine." *Id.* at 288 (internal quotation

9    marks omitted).  By the time Mexia filed suit in November 2006, the boat was no longer

10   merchantable. *Id.* at 289.

11        As to the duration provision, the *Mexia* court rejected Rinker and Miller's argument "that

12   latent defects must be discovered and reported to the seller within" the one year duration period.

13   *Id.* at 295.  As the *Mexia* court explained, "[i]n the case of a latent defect, a product is rendered

14   unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen

15   defect, not by its subsequent discovery." *Id.* at 291 ("[A]lthough a defect may not be discovered

16   for months or years after a sale, merchantability is evaluated as if the defect were known."].

17   Requiring individuals to assert an implied warranty claim within the one year duration period

18   would, according to the *Mexia* court, contravene the California legislature's intent to provide

19   consumers protection from latent defects.  *See id.* at 295 (characterizing "Rinker and Miller's

20   interpretation of the duration provision" as having "no support in the text of the statute.").

21        The *Mexia* court also rejected Rinker and Miller's argument that Mexia could not bring an

22   implied warranty claim because "the boat was fit for its ordinary purpose" at the time of sale and

23   that Mexia "did not seek repair from the defendants until over two years from the time of

24   purchase." *Id.* at 293.  "This argument," the court noted, "ignores the distinction between

25   unmerchantability caused by a latent defect and the subsequent discovery of the defect." *Id.*

26   "[T]he fact that the alleged defect resulted in destructive corrosion two years after the sale of the

27

28   Case No. 16-CV-02941-LHK
     ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION TO DISMISS

26

1    boat does not necessarily mean that the defect did not exist at the time of sale." *Id.*

2        In 2015, the Ninth Circuit held that *Mexia* governs federal courts' interpretation of the

3    Song-Beverly Act's duration provision "unless there is convincing evidence that the" California

4    Supreme Court "would decide differently." *Daniel*, 806 F.3d at 1222. On this point, the Ninth

5    Circuit analyzed the procedural history of *Mexia* and its treatment by other California state courts,

6    and found that there was no "convincing evidence that the California Supreme Court would decide

7    the issue in *Mexia* differently." *Id.* at 1223. Accordingly, *Mexia*'s rule that the duration provision

8    "does not create a deadline for discovering latent defects or for giving notice to the seller must be

9    followed." *Id.* (internal quotation marks and citation omitted).

10       As in *Mexia*, Plaintiff here alleges that the Ultra Slim wall mount that she purchased

11   contained a latent defect that caused the Ultra Slim wall mount to fail "under the regular pressure

12   of holding a Samsung television of the appropriate weight and size, as stated on the package."

13   Compl. ¶ 13. Plaintiff also alleges that purchasers of Ultra Slim wall mounts "are unable to

14   reasonably discover this issue until they experience it first hand and are exposed to the resulting

15   safety risks." *Id.* ¶ 20. Although the defect was not discovered until more than one year after

16   Plaintiff's purchase, the defect itself apparently existed at the time of purchase. Thus, the Ultra

17   Slim wall mount at issue was allegedly unmerchantable at the time of sale, *see* 95 Cal. Rptr. 3d at

18   290–91 ("The implied warranty of merchantability may be breached by a latent defect

19   undiscoverable at the time of sale."), and Plaintiff's claim is not barred by the Song-Beverly Act's

20   duration provision. *See Philips*, 2016 WL 1745948, at *6–9 (analyzing *Mexia* and *Daniel*, and

21   finding that duration provision did not bar claims when defect was discovered more than one year

22   after the purchase).

23       Further, as in *Mexia*, that Plaintiff's Ultra Slim wall mount worked for years before failing

24   does not mean that the defect did not exist at the time of sale. *Mexia*, 95 Cal. Rptr. 3d at 293

25   ("[T]he fact that the alleged defect resulted in destructive corrosion two years after the sale of the

26   boat does not necessarily mean that the defect did not exist at the time of sale."). Thus, the Court

27

28

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1   rejects Defendant's arguments as to both the duration provision and the fitness of Plaintiff's Ultra

2   Slim wall mount for its ordinary use, and DENIES Defendant's motion to dismiss Plaintiff's claim

3   under the Song-Beverly Act.

4      **E.  UCL**

5          The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair,

6   or (3) fraudulent.  Cal. Bus. & Prof. Code § 17200.  Each "prong" of the UCL provides a separate

7   and distinct theory of liability.  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th

8   Cir. 2007).  "The UCL's coverage is sweeping, and its standard for wrongful business conduct

9   intentionally broad."  *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1204 (N.D. Cal. 2014) (internal

10  quotation marks omitted).  In the instant case, Plaintiff asserts claims under all three prongs.

11  Compl. ¶¶ 29–36.

12          Defendant challenges Plaintiff's statutory standing to assert a UCL claim.  Mot. Dismiss at

13  15–16.  To establish statutory standing under the UCL, a plaintiff must demonstrate that she

14  "suffered injury in fact and [] lost money or property as a result of the unfair competition."  Cal.

15  Bus. & Prof. Code § 17204.  Interpreting this statutory language, California courts have held that

16  when the "unfair competition" underlying a plaintiff's UCL claim consists of a defendant's

17  misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered

18  economic injury as a result of that reliance, to have standing to sue.  *See Tobacco II*, 46 Cal. 4th at

19  326.  Such a showing of reliance is required under all three prongs of the UCL where such claims

20  are premised on misrepresentations.  *See, e.g.*, *Doe v. Successfulmatch.com*, 2014 WL 1494347, at

21  *4 (N.D. Cal. Apr. 16, 2014).

22          Here, the gravamen of Plaintiff's claims under the UCL is that Defendant fraudulently

23  misrepresented the weight bearing capacity of Ultra Slim wall mounts, and failed to disclose the

24  propensity of Ultra Slim wall mounts to fail.  *See* Compl. ¶¶ 31–34.  Thus, Plaintiff's UCL claims

25  sound in fraud, and Plaintiff must plead reliance on a misrepresentation or omission in order to

26  have standing under the UCL.  As explained with respect to Plaintiff's statutory standing under the

27

28  Case No. 16-CV-02941-LHK
    ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
    DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

28

United States District Court
Northern District of California

CLRA, Plaintiff fails to allege reliance.  *See supra* Section III.C.1.  In particular, the complaint does not allege that Plaintiff relied upon, or saw, any misrepresentations by Defendant about Ultra Slim wall mounts.  *See Doe*, 2014 WL 1494347, at *5 (dismissing UCL claim for lack of standing when the complaint "lacks allegations of what, if any, purported misrepresentations the two named Plaintiffs . . . actually read").  Nor does the complaint provide a reasonable basis to infer that Plaintiff relied upon any representations on the Ultra Slim wall mounts' packaging.  Thus, Plaintiff fails to allege statutory standing under the UCL, and the Court GRANTS with leave to amend Defendant's motion to dismiss Plaintiff's UCL claim.

In anticipation of a First Amended Complaint the Court notes that Plaintiff fails to state a claim under the fraudulent prong of the UCL for reasons already stated in this order.  Specifically, in the context of CLRA cases, "the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA" and "courts often analyze the two statutes together." *Kowalsky II*, 771 F. Supp. 2d at 1162; *see also Butler*, 2016 WL 4474630, at *7 (dismissing claim under the UCL's fraudulent prong when the complaint failed to state a claim under the CLRA).  In the instant case, the parties' arguments regarding Defendant's alleged fraudulent practices mirror the arguments made regarding Plaintiff's CLRA claim.  Mot. Dismiss at 9–16.  Accordingly, because the Court finds that the complaint fails to state a claim under the CLRA, the complaint also fails a claim under the fraudulent prong of the UCL.

### F.  Strict Liability

Plaintiff's fourth and fifth causes of action are for strict liability.  Compl. ¶¶ 53–67.  In California, "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 260–61 (1964).  Strict liability may be imposed for three types of product defects: manufacturing defects, design defects, and "warning defects," i.e., failures to warn.  *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 347 (2012)

29

1    (internal quotation marks omitted).  Plaintiff asserts two strict liability theories: failure to warn and

2    design defect.  The Court addresses these theories in turn.

3        **1.  Failure to Warn**

4        First, Plaintiff alleges that Defendant failed to warn purchasers of Ultra Slim wall mounts

5    of "the substantial and dangerous risk of failure from foreseeable use of the product[s]."  Compl.

6    ¶¶ 63–65.  Under California law, strict liability for a failure to warn is only imposed when the risk

7    of harm is known or knowable.  *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987,

8    1000–04 (1991) ("[K]nowledge, actual or constructive, is a requisite for strict liability for failure

9    to warn . . . .").  Moreover, whether the risk was known or knowable is assessed at the time the

10   product was distributed.  *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 64 (2008) ("Typically,

11   under California law, we hold manufacturers strictly liable for injuries caused by their failure to

12   warn of dangers that were known to the scientific community at the time they manufactured and

13   distributed their product."); *Brown v. Superior Court*, 44 Cal. 3d 1049, 1060 n.8 (1988) ("[A]

14   manufacturer's knowledge should be measured at the time a [product] is distributed because it is at

15   this point that the manufacturer relinquishes control of the product.").

16       Thus, under well-established principles of California law, Defendant's duty to warn under

17   strict liability extends only to those risks of which it had actual or constructive knowledge at the

18   time of sale.  In the instant case, as discussed above in Section III.C.2.b, Plaintiff fails to allege

19   that Defendant was aware of any defect in Ultra Slim wall mounts in September 2010, when

20   Plaintiff purchased an Ultra Slim wall mount.  Accordingly, Plaintiff fails to allege a strict liability

21   claim for failure to warn.  *See Hensley-Maclean v. Safeway, Inc.*, 2014 WL 1364906, at *2–3

22   (N.D. Cal. Apr. 7, 2014) (dismissing plaintiff's failure to warn claim because there was no

23   evidence "that [Defendant] was aware of the [defect in tainted food] at the time it sold the [tainted

24   food]").  Because Plaintiff may be able to allege additional facts to support Defendant's

25   knowledge of the alleged defect, the Court GRANTS Defendant's motion to dismiss Plaintiff's

26   strict liability claim for failure to warn with leave to amend.  *See Lopez*, 203 F.3d at 1127.

27

28   Case No. 16-CV-02941-LHK
     ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2.  Design Defect

Second, Plaintiff alleges that Ultra Slim wall mounts are defective in design due to their risk of failure.  Compl. ¶¶ 56–57.  Under California law, "a product is defectively designed if [1] it fails to meet an ordinary consumer's expectations, or if [2] injury is attributable to a specific design feature of the product and the risks associated with the design outweigh its benefits." *Papike v. Tambrands Inc.*, 107 F.3d 737, 743 (9th Cir. 1997) (citing *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413 (1978)).  The "consumer expectations" test and "risk-benefit" test provide "alternative means for a plaintiff to prove design defect and do not serve as defenses to one another." *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1121 (2002); *see also Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1312 (2012) ("Risk-benefit and consumer expectation are alternative theories for establishing a cause of action for design defect strict liability, not independent causes of action.").  The Court first addresses the consumer expectations test, then the risk-benefit test.

Under the consumer expectations test, "a product is defective in design if it failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Smith v. Adobe Sys., Inc.*, 2011 WL 4404152, at *2 (N.D. Cal. Sept. 21, 2011).  Defendant contends that Plaintiff fails to meet the consumer expectations test because Plaintiff does not allege that she used the Ultra Slim wall mount in "an intended or reasonably foreseeable manner."  Mot. Dismiss at 21.

The Court agrees.  As discussed above, it is not clear that Plaintiff used the Ultra Slim wall mount with a compatible television of appropriate weight.  Plaintiff alleges that the WMN1000C Ultra Slim wall mount is "suitable for 60–65" Samsung LED televisions (5000 series and above) and 58–63" PDP televisions (850 series and the 6000 series and above)."  Compl. ¶ 12.  Plaintiff alleges that she purchased a WMN1000C Ultra Slim wall mount for the "63-inch plasma Samsung television that she had recently purchased," without alleging the type, series, or weight of Plaintiff's television. *Id.* ¶ 21.  Without such allegations, Plaintiff fails to allege that Plaintiff used the Ultra Slim wall mount in "an intended or reasonably foreseeable manner," and thus fails to

31

1    allege a design defect under the consumer expectations test. *See Smith*, 2011 WL 4404152, at *2

2    (finding that plaintiff failed to allege a design defect under the consumer expectations test when

3    "she has no allegations that she was using the Adobe product in an intended or reasonably

4    foreseeable manner").

5        Under the risk-benefit test, "a product is defective in design if, on balance, the benefits of

6    the challenged design outweigh the risk of danger inherent in such design." *Id.* (citing *Barker*, 20

7    Cal. 3d at 430–32). "To prove a defect under this test, a plaintiff need only demonstrate that the

8    design proximately caused the injuries. Once proximate cause is demonstrated, the burden shifts

9    to the defendant to establish that the benefits of the challenged design, when balanced against such

10   factors as the feasibility and cost of alternative designs, outweigh its inherent risk of harm."

11   *McCabe*, 100 Cal. App. 4th at 1121. In the instant case, Defendant contends that Plaintiff fails to

12   allege that the risks of using the Ultra Slim wall mount outweigh the benefits. Mot. Dismiss at 21.

13       As to the risk-benefit test, the Court disagrees with Defendant. Plaintiff alleges that

14   Plaintiff used the Ultra Slim wall mount to hang her television, which involves screwing two

15   plastic disks onto the back of the television. Compl. ¶¶ 9, 21. The plastic disks hold a metal cable

16   between them. After the plastic disks and cable are attached to the television, the cable is hung

17   onto two metal disks that are screwed into the wall. *Id.* ¶¶ 9–10. The television thus hangs from

18   the cable, which hangs from the two wall-mounted metal disks. *Id.*

19       According to Plaintiff, the Ultra Slim wall mounts are defectively designed because the

20   plastic disks "are susceptible to breaking at any time" and "break under the regular pressure of

21   holding a Samsung television of the appropriate weight and size." *Id.* ¶ 13. This defect allegedly

22   injured Plaintiff because one of the plastic disks on Plaintiff's Ultra Slim wall mount failed,

23   "causing the wall mount's metal cable to separate from the plastic disk housing." *Id.* ¶ 22. In

24   turn, this caused Plaintiff's television to fall and shatter its screen. *Id.* Taking these allegations as

25   true—which the Court must on a motion to dismiss, *see Manzarek*, 519 F.3d at 1031—Plaintiff

26   has adequately alleged that the failure of the plastic disks in the Ultra Slim wall mount caused

27

28   Case No. 16-CV-02941-LHK
     ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

32

1   Plaintiff's injury.  *See Smith*, 2011 WL 4404152, at *2 (finding causation sufficiently alleged

2   when the plaintiff claimed that "security flaws [i.e., the defect] with Adobe's products . . . enabled

3   the computer hacker to cause damage").  The Court notes that Defendant does not contest that the

4   failure of the plastic disks in Plaintiff's Ultra Slim wall mount caused Plaintiff's television to fall

5   and break.

6        Because Plaintiff has alleged that "the design [of Ultra Slim wall mounts] proximately

7   caused the injuries," the burden shifts to Defendant to establish that the benefits of the challenged

8   design, when balanced against such factors as the feasibility and cost of alternative designs,

9   outweigh its inherent risk of harm."  *McCabe*, 100 Cal. App. 4th at 1121.  In the motion to

10  dismiss, Defendant states only that Plaintiff does not "allege facts showing that the alleged

11  benefits she obtained from the Wall Mount outweigh any risks or dangers."  Mot. Dismiss at 21.

12  This one sentence argument does not meet *Defendant's* burden to show that the benefits of the

13  design outweigh the risks.  *See McCabe*, 100 Cal. App. 4th at 1121; *Altman v. HO Sports Co.*,

14  2009 WL 4163512, at *8 (E.D. Cal. Nov. 23, 2009) (holding that a plaintiff need not allege how

15  the risks of the design outweigh the benefits, because burden is on defendant).  Thus, the Court

16  concludes that Plaintiff has sufficiently alleged a design defect under the risk-benefit test.  *See*

17  *McCabe*, 100 Cal. App. 4th at 1121; *cf. Berry v. Oshkosh Truck Corp.*, 2007 WL 174334, at *4

18  (E.D. Cal. Jan. 22, 2007) (denying summary judgment on risk-benefit test when the plaintiff

19  demonstrated the product design was a substantial cause of the plaintiff's injury, even though there

20  was a dispute whether the plaintiff followed the appropriate safety instructions).  Accordingly, the

21  Court DENIES Defendant's motion to dismiss Plaintiff's strict liability claim for design defect.

22  **G.  Negligence**

23        Plaintiff's last cause of action, for negligence, requires Plaintiff to allege: (1) the

24  defendant's legal duty of care; (2) the defendant's breach of duty; (3) injury to the plaintiff as a

25  result of the breach; and (4) damage to the plaintiff.  *See Hoyem v. Manhattan Beach City Sch.*

26  *Dist.*, 22 Cal. 3d 508, 513 (1978).  In the instant case, Plaintiff asserts that Defendant was

27

28  Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

33

1    negligent in two ways: (1) failing to adequately warn purchasers of Ultra Slim wall mounts'

2    propensity to fail, and (2) negligently designing Ultra Slim wall mounts with a "dangerous

3    propensity of failure." Compl. ¶¶ 68–72.

4         The parties agree that, in this case, Plaintiff's negligence claim rises or falls with Plaintiff's

5    strict liability claims.  *See* Mot. Dismiss at 22; Dismiss Opp. at 17.  The Court concludes that,

6    similar to Plaintiff's strict liability claims, Plaintiff fails to state a claim for negligent failure to

7    warn while Plaintiff sufficiently alleges a claim for negligent design.

8         As to Plaintiff's claim for negligent failure to warn, "[n]egligence law in a failure-to-warn

9    case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk

10   for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent

11   manufacturer *would have known and warned about*."  *Carlin v. Superior Court*, 13 Cal. 4th 1104,

12   1112 (1996) (emphasis added).  As discussed above, Plaintiff fails to allege that Defendant knew

13   of any defect in Ultra Slim wall mounts and thus that Defendant "would have known and warned

14   about" the defect.  *See id.*  Accordingly, the Court GRANTS with leave to amend Defendant's

15   motion to dismiss Plaintiff's negligence claim to the extent that the claim is founded on a failure to

16   warn.  *See Lopez*, 203 F.3d at 1127.

17        As to Plaintiff's negligent design claim, "most of the evidentiary matters relevant to

18   applying the risk[-]benefit test in strict liability cases are similar to the issues typically presented

19   in a negligent design case."  *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 480 (2001) (internal

20   quotation marks omitted).  This is because, similar to the strict liability risk-benefit test, the test

21   for negligent design "involves a balancing of the likelihood of harm to be expected from a

22   [product] with a given design and the gravity of harm if it happens against the burden of the

23   precaution which would be effective to avoid the harm."  *Id.* at 479 (internal quotation marks

24   omitted).  Accordingly, design defect strict liability claims and negligent design claims often rise

25   or fall together.  *See Chavez*, 207 Cal. App. 4th at 1315 (concluding summary adjudication was

26   not warranted on negligent design claim because summary adjudication was not warranted on

27

28   Case No. 16-CV-02941-LHK
     ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
     DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

34

1   strict liability for design defect under the risk-benefit test).

2       Because the Court concludes above that Plaintiff sufficiently alleges a design defect under

3   the risk-benefit test, the Court finds that Plaintiff sufficiently alleges negligent design to survive a

4   motion to dismiss.  *See Merrill*, 26 Cal. 4th at 481 ("Plaintiffs' claim that Navegar's decision to

5   distribute [a certain weapon] to the general public was negligent given the weapon's particular

6   design features is therefore simply a reformulated claim that the weapon, as designed, fails the

7   risk-benefit test."); *Chavez*, 207 Cal. App. 4th at 1315 (finding same conclusion applied to

8   negligent design and strict liability design defect claims).  The Court thus DENIES Defendant's

9   motion to dismiss Plaintiff's negligence claim to the extent that the claim is founded on negligent

10  design.

11  **IV.    CONCLUSION**

12      For the foregoing reasons, the Court DENIES Plaintiff's motion to remand.  The Court

13  also GRANTS in part and DENIES in part Defendant's motion to dismiss, as follows:

14      • As to Plaintiff's claim under the CLRA, the Court GRANTS Defendant's motion to

15          dismiss with leave to amend.

16      • As to Plaintiff's claim under the Song-Beverly Act, the Court DENIES Defendant's

17          motion to dismiss.

18      • As to Plaintiff's claim under the UCL, the Court GRANTS Defendant's motion to

19          dismiss with leave to amend.

20      • As to Plaintiff's claim for strict liability for failure to warn, the Court GRANTS

21          Defendant's motion to dismiss with leave to amend.

22      • As to Plaintiff's claim for strict liability for design defect, the Court DENIES

23          Defendant's motion to dismiss.

24      • As to Plaintiff's claim for negligence, the Court GRANTS with leave to amend

25          Defendant's motion to dismiss to the extent that the claim is founded upon

26          negligent failure to warn.  The Court DENIES Defendant's motion to dismiss to the

27

28  Case No. 16-CV-02941-LHK
    ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
    DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

35

1           extent that the claim is founded upon negligent design.

2 Should Plaintiff elect to file an amended complaint curing the deficiencies identified in this order,

3 Plaintiff shall do so within twenty-one (21) days of the date of this order.  Failure to meet this

4 deadline, or failure to cure the deficiencies identified in this order, will result in a dismissal with

5 prejudice.  Plaintiff may not add new parties or claims without leave of the Court or stipulation of

6 the parties pursuant to Federal Rule of Civil Procedure 15.

7 **IT IS SO ORDERED.**

8

9 Dated: September 12, 2016

10                                      *Lucy H. Koh*

11                                 LUCY H. KOH
                                United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

36

Case No. 16-CV-02941-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS